361 Mich. 661 (1960)
106 N.W.2d 166
In re BEITER ESTATE.
HAMPTON
v.
PEARSALL.
Docket No. 6, Calendar No. 47,923.
Supreme Court of Michigan.
Decided December 1, 1960.
Verne C. Hampton, named executor, plaintiff.
Milton F. Cooney, for defendants.
SMITH, J.
This is a will contest. It is asserted that, as a matter of law, the testatrix was not possessed of the mental capacity to execute a valid will.
The charge made arises out of Mrs. Beiter's (the testatrix's) condition at the time of execution of the will in July of 1953. She had suffered a severe stroke in November of 1952. Some 3 months later she suffered another and had remained under the care of private nurses in St. Joseph's Hospital, in Pontiac, until she died in January of 1956.
About a month prior to her first stroke, however, she had discussed with an attorney of Pontiac, Mr. Hampton, the provisions of her will. Among other provisions, she wanted her incompetent son to be well cared for. She wanted certain war bonds to go to certain people. Her fur coat was to go to one friend, her sewing machine to another. A trust (she did not use that word) was to be created for the care of her son, and the names of trustees were discussed. *663 Mr. Hampton was to handle the estate. Other points were discussed but it is unnecessary to recite them here. Obviously the lady was aware of the problems confronting her and sought an orderly arrangement of her affairs. Two additional conferences, in fact, were had with her counsel, Mr. Hampton.
The will, however, was not drawn nor presented to her until after her illness, on July 30, 1953, to be exact. At this time she was partially paralyzed. She was diagnosed as having suffered a "cerebral hemorrhage with right hemiplegia." A portion of the brain had been damaged, or blocked off, by the hemorrhage, causing a paralysis of the right side of her body and the left side of her face, as well as a loss of ability to speak, all of which conditions persisted until her death. She was unable to speak words, except perhaps "yes" and "no," and she made her wants known by responding affirmatively or negatively (a nod or shake of head and making "this sound that sounded like `yes' or `no'") to questions framed so as to elicit such a response.
Mr. Hampton prepared her will in accordance with her wishes as previously expressed to him. In view of her condition he took considerable care in respect of its execution. Her regular physician was asked if she were competent. He replied, "I told him [Mr. Hampton] that I thought she was, but rather than trust to my own judgment, I thought perhaps we should call in a neurologist, one who is familiar with the results of this sort of illness which she had and get his opinion as to whether or not he felt she was mentally competent." Accordingly Dr. Gates, a specialist, was consulted, and it was his opinion "that she could well understand what she was proposing to do."
The will, accordingly, was prepared in accordance with her previously expressed wishes and read to *664 her in the presence of another Pontiac attorney and 2 nurses. At 2 points in the reading of the will, Mrs. Beiter shook her head. She was dissatisfied with certain bequests. After questioning to ascertain her wishes, certain changes were made to which she assented. Mrs. Stewart (one of the nurses) then placed a pen in her hand and guided it to form an "X". It is this will, so executed, that is challenged by the coguardians of the incompetent son. The will contest, tried before court and jury in the Oakland county circuit court, resulted in a verdict sustaining the will.
Appellants' attack centers upon the proposition that the testatrix could not (at the time of the execution of the will) "express her thoughts concerning a will; and further, could not and did not dictate her will without prompting from others." Reliance is placed upon Spratt v. Spratt, 76 Mich 384, where this language of "prompting" and "dictating" is found. There the court, in speaking of the testator, said that he had sufficient capacity to make a will if, at the time he executed the will, he "had sufficient mental capacity to understand the business in which he was engaged, to know and understand the extent and value of his property, and how he wanted to dispose of it, and to keep those facts in his mind long enough to dictate his will without prompting from others." Id. at 391, 392.
All of this, as sound today as when written, in no way impeaches the validity of what was here done. The testatrix had, indeed, dictated the disposition of her property, making clear in a series of conferences just what she wanted done with it. And, so far as prompting is concerned, the record before us is clear that it was she, and not some other, who was doing the prompting at the time of the execution, haltingly and crudely, it is true, but nonetheless effectively. Our general rule as to competence was *665 well put in In re Walker's Estate, 270 Mich 33, 37, in these terms:
"In general the requisite is that the testator must at the time of making his will have sufficient mentality to enable him to know what property he possesses and of which he is making a testamentary disposition, to consider and know who are the natural objects of his bounty, and to understand what the disposition is that he is making of his property by his will."
We find nothing in the record indicating a lack of competence. Contestants' principal argument hinges on the allegation that Mrs. Beiter could not "dictate" her will, meaning, apparently, in the manner a businessman dictates a letter to his secretary. The law is not so narrow. What is required is no more than understanding and communication. Both were here present. Fluency is not the test.
The jury verdict was well justified on the record and the contestants' motions for directed verdict and new trial were properly denied. Affirmed. Costs to appellee.
DETHMERS, C.J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.